REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Edward W. Lukas (SBN 155214)
HARRINGTON, FOXX, DUBROW & CANTER, LLP
333 South Hope Street, Suite 1000
Los Angeles, California 90071
Telephone: (213) 489-3222
elukas@kfdclaw.com

Linda D. Mettes (*Pro Hac Vice*)
Rebecca J. Cantor (*Pro Hac Vice*)
Kristin L. Murphy (*Pro Hac Vice*)
Anita C. Marinelli (*Pro Hac Vice*)
BROOKS KUSHMAN P.C.
1000 Town Center
Twenty-Second Floor
Southfield, Michigan 48075
Telephone:  248-358-4400
lmettes@brookskushman.com
rcantor@brookskushman.com

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCADO LATINO, INC. dba CONTINENTAL CANDLE COMPANY,<br><br> *Plaintiff,*<br><br>v.<br><br>INDIO PRODUCTS, INC., a California Corporation, and DOES 1 through 10, Inclusive,<br><br> *Defendant.* | Case No.  2:13-cv-01027-DDP-JEM<br><br>**DEFENDANT INDIO PRODUCTS, INC'S NOTICE OF MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS AND BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**<br><br>Judge: Hon. Dean D. Pregerson<br>Courtroom: 9C<br>Date: Monday, June 4, 2018<br>Time: 10:00 AM |

TO PLAINTIFF AND ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on June 4, 2018 at 10:00 AM, or as soon thereafter as counsel may be heard by the above entitled Court, located at 350 W. 1st Street Ninth Floor, Los Angeles, CA 90012, Defendant Indio Products, Inc. will and hereby does move the Court for summary judgment on the ground that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law as Mercado cannot meet its burden to prove that 1) the trade dress, as claimed, is protectible; 2) the trade dress and trademark is infringed; and 3) there are any damages.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Statement of Uncontroverted Facts and Conclusions of Law, accompanying declarations, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 11, 2018.

In sum, Mercado had difficult hurdles to establish liability for its claim of unregistered trade dress infringement, including: 1) a protectible trade dress when its product design trade dress is presumptively unprotectible as functional and without secondary meaning; and 2) infringement when this Court has already found the stained-glass border designs surrounding the public domain images to be dissimilar. With discovery closed, Mercado fell far short on each of those hurdles and furthermore has no factually feasible path for any damages.

As detailed in the brief in support of the motion and the accompanying Statement of Undisputed Facts and Conclusions of law, Indio files for summary judgment on the following issues:

a) Mercado lacks a protectible common law trade dress right over the configuration of a product design:

i)     it failed to prove ownership of common law rights in the Asserted Trade Dress in any geographic area;

ii)    its definition of its Asserted Trade Dress is so overbroad as to be generic;

iii)   it failed to come forward with legally sufficient evidence to overcome the heavy presumption of a lack of secondary meaning; and

iv)   it failed to come forward with legally sufficient evidence to overcome the presumption of functionality for unregistered trade dress.

b) Mercado has insufficient evidence to establish infringement on the two key confusion factors of similarity and marketing channels, where the stained-glass designs of the parties are not substantially similar as a matter of law (as already previously ruled by this Court) and ███████████████████ ███████████████████████████████████ with all the other factors based on undisputed facts in support of Indio or neutral;

c) Mercado cannot prove willfulness and lacks any viable damages theory because ████████████████████████████████ ████████████████████████████████ ██████████████████ and

d) Mercado cannot prove the other counts that rely on the trade dress infringement contentions and that the first sale doctrine does not preclude their trademark infringement claim.

Mercado did not conduct the crucial secondary meaning survey. Mercado engaged no damages expert. With all discovery concluded, Mercado failed to produce any fact or expert discovery on the key elements on which it bears the burdens of proof.   Indio respectfully moves for summary judgment and dismissal of Counts I-IV.

Respectfully submitted,

Dated: April 26, 2018

By: /s/ Linda D. Mettes
Linda D.  Mettes (*Pro Hac Vice*)
Rebecca J.  Cantor (*Pro Hac Vice*)
Kristin L. Murphy (*Pro Hac Vice*)
Anita C. Marinelli (*Pro Hac Vice*)
**BROOKS KUSHMAN P.C.**
1000 Town Center, 22nd Floor
Southfield, MI    48075
Tel:  248-358-4400 / Fax:  248-358-3351
lmettes@brookskushman.com

Edward W. Lukas
**HARRINGTON, FOXX, DUBROW &
CANTER, LLP**
333 South Hope Street, Suite 1000
Los Angeles, California 90071
Telephone: (213) 489-3222
elukas@kfdclaw.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

1

2

TABLE OF AUTHORITIES ..................................................................................... iii

I.  INTRODUCTION ............................................................................................1

II.  BACKGROUND ..............................................................................................1

III.  LEGAL STANDARD ......................................................................................3

IV.  ARGUMENT ...................................................................................................3

    A.  Mercado's Asserted Trade Dress is Not Protectible ..............................4

        1.  Mercado Neglected to Produce Geographic Penetration Evidence Necessary to Establish Common Law Trade Dress ................................................................................................ 4

        2.  The Overbroad Trade Dress is a <u>Generic</u> Prayer Candle ........... 6

        3.  Mercado Failed to Prove Secondary Meaning: that the Primary Significance of the Asserted Trade Dress is Source Identification .................................................................. 8

            a.  Mercado Has No Direct Evidence of Secondary Meaning ............................................................................. 9

            b.  Mercado Has No Circumstantial Evidence that Consumers Associate the Asserted Trade Dress to a Single Source ..................................................... 9

        4.  The Alleged Trade Dress is Functional ................................... 13

            a.  The Trade Dress is the Functional Benefit the Consumer Purchases ..................................................... 14

            b.  The Asserted Trade Dress is Also Aesthetically Functional ..................................................................... 15

    B.  Mercado Failed to Establish a Likelihood of Confusion ..................... 17

        1.  The Prayer Candles are not Similar ......................................... 17

        2.  The Prayer Candles have Distinct Marketing Channels and are not Proximate in the Market ................................. 17

        3.  The Other Factors Weigh Against a Likelihood of Confusion ................................................................................ 18

        4.  The Totality Supports a Finding of No Likelihood of Confusion ................................................................................ 20

C.     Mercado Cannot Prove any Exception to the First Sale Defense ....... 21

D.     Mercado's Remaining Claims Fall with the Lanham Act Claims ........ 22

E.     Mercado is not Entitled to Damages or Willfulness ........................... 22

       1.     Mercado Cannot Prove Lost Profits for Carisma Candles ........ 23

       2.     Mercado Cannot Prove Willfulness or Disgorgement of Profits ........................................................................................ 24

       3.     Mercado Did Not Provide Evidence or Even a Viable Theory of Corrective Advertising or Other Damages ............... 25

V.     CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Adray v. Adry-Mart, Inc.*,
    76 F.3d 984 (9th Cir. 1996)..........................................................................5, 25

*Agostini v. Felton*,
    521 U.S. 203 (1997).........................................................................................12

*Alchemy II, Inc. v. Yes! Ent. Corp.*,
    844 F. Supp. 560 (C.D. Cal. 1994)................................................................21

*A'lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*,
    2013 WL 12174580 (C.D. Cal. Apr. 1, 2013) ..............................................7

*Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*,
    616 F.2d 440 (9th Cir. 1980)..........................................................................17

*Alphaville Design, Inc. v. Knoll, Inc.*,
    627 F. Supp. 2d 1121 (N.D. Cal. 2009).......................................................14

*Al-Site Corp. v. VSI Int'l, Inc.*,
    174 F.3d 1308 (Fed. Cir. 1999) ......................................................................9

*Am. Greetings Corp. v. Easter Unlimited, Inc.*,
    579 F. Supp. 607 (S.D.N.Y. 1983)................................................................21

*AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979)..........................................................................17

*Apple Inc. v. Samsung Elecs. Co.*,
    786 F.3d 983 (Fed. Cir. 2015) ......................................................................14

*Aromatique, Inc. v. Gold Seal, Inc.*,
    28 F.3d 863 (8th Cir. 1994)............................................................................11

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
    581 F.3d 1138 (9th Cir. 2009)..........................................................................3

*Asics Corp. v. Skechers U.S.A.*,
    2007 WL 1424670 (C.D. Cal. Apr. 26, 2007)..............................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Avery Dennison Corp. v. Acco Brands, Inc.*,
    1999 WL 33117262 (C.D. Cal. Oct. 12, 1999) ...........................................4

*Big Island Candies Inc. v. Cookie Corner*,
    269 F. Supp. 2d 1236 (D. Haw. 2003) .......................................................6

*Black's Guide, Inc. v. Mediamerica, Inc.*,
    1990 WL 169141 (N.D. Cal. Aug. 15, 1990) ...........................................21

*Brilliance Audio v. Haights Cross Communs. Inc.*,
    474 F.3d 365 (6th Cir. 2007) ....................................................................22

*Cairns v. Franklin Mint Co.*,
    24 F. Supp. 2d 1013 (C.D. Cal. 1998) .....................................................20

*Carter-Wallace, Inc. v. P&G Co.*,
    434 F.2d 794 (9th Cir. 1970) ......................................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ....................................................................................3

*Chesebrough–Pond's, Inc. v. Faberge, Inc.*,
    666 F.2d 393 (9th Cir. 1982) ....................................................................21

*Cicena Ltd. v. Columbia Telcoms. Grp.*,
    900 F.2d 1546 (Fed. Cir. 1990) ................................................................11

*Clicks Billiards, Inc. v. Sixshooters Inc.*,
    251 F.3d 1252 (9th Cir. 2001) ............................................................ 14, 16

*Cont'l. Lab. Prod., Inc. v. Medax Int'l, Inc.*,
    114 F. Supp. 2d 992 (S.D. Cal. 2000) ........................................................3

*E. & J. Gallo Winery v. Proximo Spirits, Inc.*,
    583 Fed. Appx. 632 (9th Cir. 2014) .........................................................20

*Ear Charms, Inc. v. Bling Jewelry, Inc.*,
    2017 WL 2957796 (C.D. Cal. Apr. 11, 2017) ..........................................13

*Elements Spirits, Inc. v. Iconic Brands, Inc.*,
    2015 U.S. Dist. LEXIS 75986 (C.D. Cal. June 11, 2015) ..........................5

*Express, LLC v. Forever 21, Inc.*,
    2010 WL 3489308 (C.D. Cal. Sept. 2, 2010) .............................................8

*EZ Pedo, Inc. v. Mayclin Dental Studio, Inc.*,
　　284 F. Supp. 3d 1065 (E.D. Cal. 2018) ............................................................8

*Falcon Stainless, Inc. v. Rino Companies, Inc.*,
　　572 Fed. Appx. 483(9th Cir. 2014) ...............................................................20

*Farmgirl Flowers, Inc. v. Bloom That, Inc.*,
　　2015 WL 1939424 (N.D. Cal. Apr. 28, 2015) ...............................................16

*Farouk Sys. v. Target Corp.*,
　　2008 U.S. App. LEXIS 1225 (5th Cir. Jan. 22, 2008) ...................................22

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
　　925 F. Supp. 2d 1067 (C.D. Cal. 2012) .........................................................14

*Glow Industries, Inc. v. Lopez*,
　　252 F. Supp.2d 962 (C.D. Cal. 2002) ...................................................... 4, 5, 22

*GoTo.Com, Inc. v. Walt Disney Co.*,
　　202 F.3d 1199 (9th Cir. 2000) .......................................................................17

*Hanginout, Inc. v. Google, Inc.*,
　　54 F. Supp. 3d 1109 (S.D. Cal. 2014) ..............................................................5

*Herbalife Int'l, Inc. v. Lumene N. Am. LLC*,
　　2007 WL 4225776 (C.D. Cal. Oct. 15, 2007) ...............................................18

*Honeywell Int'l Inc. v. ICM Controls Corp.*,
　　45 F. Supp. 3d 969 (D. Minn. 2014) .............................................................15

*Icon Enter. Int'l, Inc. v. Am. Prod. Co.*,
　　2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) .......................................... 11, 19

*Int'l Oddities v. Record*,
　　2013 WL 3864050 (C.D. Cal. July 22, 2013)................................................25

*Intel Corp. v. Terabyte Int'l*,
　　6 F.3d 614 (9th Cir. 1993)..............................................................................23

*Int'l Order of Job's Daughters v. Lindeburg*,
　　633 F.2d 912 (9th Cir. 1980)..........................................................................16

*Jada Toys Inc.* v. *Mattel, Inc.*,
    496 F.3d 974 (9th Cir. 2007) ..................................................17

*Karoun Dairies, Inc. v. Los Altos Food Prods.*,
    107 Fed. Appx. 785 (9th Cir. 2004) ..............................19

*Katzkin Leather, Inc. v. Nissan N. Am., Inc.*,
    2005 U.S. Dist. LEXIS 45540 (C.D. Cal. Dec. 22, 2005) ...........................22

*Kendall–Jackson Winery, Ltd. v. E & J Gallo Winery*,
    150 F.3d 1049 (9th Cir. 1998) ......................................7, 14

*Kind LLC v. Clif Bar & Co.*,
    2014 WL 2619817 (S.D.N.Y. June 12, 2014) ................................18

*Lear v. Murphy*,
    844 F.2d 628 (9th Cir. 1988) ......................................11

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985) ....................................8, 11

*LHO Chi. River, LLC v. Perillo*,
    2016 U.S. Dist. LEXIS 183691 (N.D. Ill. 2016) .............................9

*Lindy Pen Co.,v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) ..................................... 23, 24

*Litchfield v. Spielberg*,
    736 F.3d 1352 (9th Cir. 1984) ....................................21

*M2 Software, Inc. v. Madacy Entertainment*,
    421 F.3d 1073 (9th Cir. 2005) ....................................21

*Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*,
    65 F.3d 1063 (2d Cir. 1995) ......................................6

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
    290 F. Supp. 2d 1083 (C.D. Cal. 2003) ..............................19

*Millennium Labs. v. Ameritox, Ltd.*,
    817 F.3d 1123 (9th Cir. 2016) ....................................14

*Moroccanoil, Inc. v. Zotos Int'l, Inc.*,
    230 F. Supp. 3d 1161 (C.D. Cal. 2017) ............................18

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011)........................................................17

*New Milani Grp., Inc. v. J.T. Bella, LLC*,
    2013 WL 12116579 (C.D. Cal. July 22, 2013)................................18

*Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*,
    809 F.2d 601 (9th Cir. 1987)........................................................19

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
    578 F.3d 1154 (9th Cir. 2009)......................................................17

*Pagliero v. Wallace China Co.*,
    198 F.2d 339 (9th Cir. 1952).......................................................16

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*,
    669 F. Supp. 2d 1235 (D. Colo. 2009) ..........................................13

*Prestonettes, Inc., v. Coty*,
    264 U.S. 359 (1924) .............................................................. 21, 22

*Quia Corp. v. Mattel, Inc.*,
    2011 WL 2749576 (N.D. Cal. July 14, 2011) ................................25

*Razor USA LLC v. Vizio, Inc.*,
    2015 WL 12656941 (C.D. Cal. Oct. 19, 2015) ..............................24

*Red Star Traders, LLC v. Abbyson Living Corp.*,
    2016 WL 9108405 (C.D. Cal. June 22, 2016)................................14

*Reserve Media, Inc. v. Efficient Frontiers, Inc.*,
    2017 WL 1377591 (C.D. Cal. Apr. 14, 2017) .............................3, 8

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
    265 F. Supp. 3d 1013 (N.D. Cal. 2017).........................................19

*SCG Characters LLC v. Telebrands Corp.*,
    2015 WL 4624200 (C.D. Cal. Aug. 3, 2015) ...................................6

*Secalt S.A. v. Wuxi Shenxi Constr. Co.*,
    668 F.3d 677 (9th Cir. 2012)................................................. 13, 14

*Seed Lighting Design Co., Ltd. v. Home Depot*,
    2005 WL 1868152 (N.D. Cal. Aug. 3, 2005) ...................................8

*Shevy Custom Wigs, Inc. v. Aggie Wigs,*
   2006 WL 3335008 (E.D.N.Y. Nov. 17, 2006) .................................................7

*Spark Indus., LLC v. Kretek Int'l, Inc.,*
   2014 U.S. Dist. LEXIS 125538 (C.D. Cal. Aug. 28, 2014)...........................13

*Spin Mater, Ltd. v. Zobmondo Entmt., LLC.,*
   944 F. Supp. 2d 830 (C.D. Cal. 2012)...........................................................24

*Stone Creek, Inc. v. Omnia Italian Design, Inc.,*
   875 F.3d 426 (9th Cir. 2017) ........................................................................17

*Sullivan v. Dollar Tree Stores, Inc.,*
   623 F.3d 770 (9th Cir. 2010) ........................................................................11

*Talking Rain Bev. Co. v. S. Beach Bev. Co.,*
   349 F.3d 601 (9th Cir. 2003) ........................................................................15

*THOIP v. Walt Disney Co.,*
   690 F. Supp. 2d 218 (S.D.N.Y. 2010) ..........................................................19

*Toughlove America, LLC, v. MTV Networks Company, et al.,*
   2009 WL 10669245 (C.D. Cal. Apr. 21, 2009) .............................................18

*Two Pesos v. Taco Cabana,*
   505 U.S. 763 (1992) ........................................................................................8

*Vision Ctr. v. Opticks, Inc.,*
   596 F.2d 111 (5th Cir. 1979) ..........................................................................9

*Vision Sports, Inc. v. Melville Corp.,*
   888 F.2d 609 (9th Cir. 1989) ..........................................................................8

*Walker & Zanger, Inc. v. Paragon Indus., Inc.,*
   549 F.Supp.2d 1168 (N.D. Cal. 2007)................................................... 6, 7, 12

*Warner Bros. Inc. v. Am. Broad. Companies, Inc.,*
   720 F.2d 231 (2d Cir. 1983) .........................................................................21

*Watson-Marlow, Ltd v. Changzhou Prefluid Tech. Co.,*
   2014 WL 12586432 (C.D. Cal. Aug. 1, 2014) ..............................................12

*Wuv's Int'l, Inc. v. Love's Enters., Inc.,*
    208 U.S.P.Q. 736 (D. Colo. 1980)................................................................20

*Yankee Candle Co. v. Bridgewater Candle Co.,*
    259 F.3d 25 (1st Cir. 2001).......................................................................12

*Yurman Design, Inc. v. PAJ, Inc.,*
    262 F.3d 101 (2d Cir. 2001).......................................................................7

# I.   INTRODUCTION

Mercado Latino, Inc. ("Mercado") brought this suit to prevent legitimate competition by Indio Products, Inc. ("Indio"), first focusing on its registered copyrights before pivoting to an unregistered trade dress claim based on the Asserted Trade Dress defined in its Second Amended Complaint ("SAC").

This Court already dismissed the copyright claims – holding that **copying did not occur as a matter of law** where the design of the stained-glass window border on the accused Templar prayer candles was **not substantially similar** to the copyrighted design.  After the Ninth Circuit remanded the trade dress claims, holding that trade dress could cover the same design as a copyright without preemption, this Court denied Indio's Rule 12 motion and permitted Mercado to proceed with discovery.  Nevertheless, this Court explicitly held that Mercado claimed trade dress over a product design – the most difficult form of trade dress to establish protectability – and stated that while Mercado need not "provide any evidence at the pleading stage," **"the veracity of [Mercado's] allegations remains to be seen."** DN 95 at 8-9 (emphasis added).  Summary judgment is appropriate because discovery is closed and factual evidence still "remains to be seen."  Mercado largely refused to participate in the discovery process and was unable to produce evidence as to multiple independent trade dress issues – ownership, distinctiveness, non-functionality, non-genericness, infringement, and damages – on which it bears the burden of proof.

# II.   BACKGROUND

The largely undisputed facts are set forward in the accompanying Statement of Facts.  In sum, Plaintiff Mercado and Defendant Indio both sell various lines of prayer candles.  SOF ¶¶ 35, 50.  Prayer candles are sold by *many* competitors (SOF ¶¶ 8, 10), comprise a market estimated as $200-300 million dollars annually (SOF ¶ 11), and feature a tall cylindrical glass jar containing wax and a decorative label of a public domain religious figure with religious ornamentations, borders and prayers on the back, as exemplified by various *non-accused* prayer candle lines below:



manufactures at least three lines of prayer candles including:  1) ▇▇▇▇▇▇ Sanctuary Series line which bears the Asserted Trade Dress (far left); and 2) ▇▇▇▇ Carisma line *without* the purported trade dress (second from left).  SOF ¶ 35.  As defined in the SAC, Mercado claims trade dress rights over basic prayer candle elements: an 8-inch tall clear cylindrical jar with a label having any saint surrounded by **any** stained-glass window border – *i.e.*, a border that Mercado broadly defined as "segments of shapes in varying and alternative sizes and colors."  SOF ¶19.

Indio's ▇▇▇▇▇▇▇ Eternalux line that is *not* accused of infringement (second from right); ▇▇▇▇▇▇ the Templar candle, is the one Mercado accuses (far right). SOF ¶¶ 50, 51. ▇▇▇▇▇▇

## III.   LEGAL STANDARD

"Because affording trade dress protection to product designs may hinder legitimate competition, the Ninth Circuit has advised district courts to evaluate such claims with greater scrutiny than claims involving other forms of trade dress." *Cont'l. Lab. Prod., Inc. v. Medax Int'l, Inc*., 114 F.Supp.2d 992, 997 (S.D. Cal. 2000) (citing *Leatherman Tool Group, Inc. v. Cooper Indus., Inc*., 199 F.3d 1009, 1012–13 (9th Cir. 1999)).  Mercado bears multiple burdens of proof to identify admissible evidence sufficient to raise a genuine fact issue that can meet its burden of proof to establish protectible trade dress, infringement, and damages.  *See Art Attacks Ink, LLC v. MGA Entm't Inc*., 581 F.3d 1138, 1145 (9th Cir. 2009).  As to trade dress over product design, the Supreme Court has cautioned that "product design almost invariably serves purposes other than source identification" – and thus is presumptively unprotectible.  *Wal-Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 214 (2000). Mercado must overcome the presumption against secondary meaning and the presumption against functionality attached to unregistered trade dress.

As the Supreme Court explained: "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Reserve Media, Inc. v. Efficient Frontiers, Inc*., 2017 WL 1377591, at *2 (C.D. Cal. Apr. 14, 2017).

## IV.   ARGUMENT

Mercado has failed to identify specific facts or produce sufficient evidence that shows there is a genuine issue on the multitude of issues on which it bears the burden of proof.  *First*, Mercado cannot prove that the Asserted Trade Dress is protectible for four reasons: i) Mercado has no evidence of common law trade dress ownership, particularly as Mercado withheld sales and all geographic evidence; ii) Mercado defined its Asserted Trade Dress so overbroadly as to be generic; iii) Mercado did not

advance evidence to overcome the presumption against secondary meaning attached to unregistered trade dress (SOF ¶ 17); and iv) Mercado did not advance evidence to overcome the presumption of functionality.  *Second*, even if its trade dress were protectible, Mercado cannot prove a likelihood of confusion which is a question of law when the underlying factors are not in dispute.  Here, it is law of the case that the products are not substantially similar as to the only aspect of the Asserted Trade Dress that is not standard to a prayer candle – and the other factors do not support a likelihood of confusion.  *Lastly*, Mercado has no evidence of willfulness or any damages – whether lost profits, disgorgement/willfulness, or corrective advertising.

The trade dress claims ultimately fail for similar reasons as the copyright claim: *Mercado cannot lay claim over the idea of using a stained-glass cathedral window border on a prayer candle.*

**A.    Mercado's Asserted Trade Dress is Not Protectible**

A party asserting common law rights must show that it is the senior user of the trade dress with a legally sufficient market penetration in a defined geographic market. *Glow Industries, Inc. v. Lopez*, 252 F.Supp.2d 962, 983 (C.D. Cal. 2002).  Mercado also must also prove that its claimed trade dress over a product design is: (1) not generic; (2) possesses secondary meaning by primarily serving a source-identifying role through acquired distinctiveness; and (3) nonfunctional. *Avery Dennison Corp. v. Acco Brands, Inc*., 1999 WL 33117262, *31-33 (C.D. Cal. Oct. 12, 1999).

**1.    Mercado Neglected to Produce Geographic Penetration Evidence Necessary to Establish Common Law Trade Dress**

Despite the base requirement of geographical market penetration to any common law trade dress claim, Mercado deliberately withheld all customer information concerning its Sanctuary Series including all geographic information –

████████████████████████████████████████████

████████████████████████████████████████████

████████ Mercado neglected its duty to produce evidence on this basic requirement.

Common law trademark rights do not exist absent market penetration in a specific geographic area, which is evidenced by: (1) sales volume in the geographic area; (2) growth trends of the product both positive and negative; (3) the number of persons purchasing the product in relation to the total number of potential customers; and (4) the amount of advertising. *Glow Industries*, 252 F.Supp.2d at 983; *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1996). ███████████

██████████████████████████████████████████████

████████████████████ At best, Mercado has argued – without evidence – ██████

██████████████████████████████████████████████

████████ However, general testimony of "nationwide sales" and website sales without "level of sales in any location" is not adequate to establish "legally sufficient market penetration." *Glow Indus.*, 252 F.Supp.2d at 984-85. ███████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████ "Failure to present any evidence as to the actual location of [customers]" is "dispositive." *Hanginout, Inc. v. Google, Inc.*, 54 F.Supp.3d 1109, 1122 (S.D. Cal. 2014); *Glow Indus.*, 252 F.Supp.2d at 984 (no market penetration where no evidence of the "volume or level of sales in any location, nor how [plaintiff's] market penetration compares with that of competitors").

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████ ████████████████████

█████████████████████████████████ "[I]f Plaintiffs' trade dress infringes . . . [another's] copyrights . . . there is no trade dress right[.]" *Elements Spirits, Inc. v. Iconic Brands, Inc.*, 2015 U.S. Dist. LEXIS 75986, at *13 (C.D. Cal. June 11, 2015).

---

[1] █████████████████████████████████████████████

████████████████████████████████████████████

1 ████████████████████████████████████████████████

2 ████████████████████████ █████████████████ This is yet another ownership problem

3 for Mercado, in addition to the failure to produce mandatory geographic evidence.

### 2.    The Overbroad Trade Dress is a <u>Generic</u> Prayer Candle

The Asserted Trade Dress is generic because Mercado broadly and amorphously defined it to cover *any* tall clear glass jar containing *any* single-color wax and embellished with *any* religious figure in a border having *any* "shapes" and *any* "sizes and colors."[3] SOF ¶ 19.  A product design will not be protectable "if a product design is the basic form of a type of product" or "the definition of a product design is overbroad or too generalized."  *Walker & Zanger, Inc. v. Paragon Indus., Inc.,* 549 F.Supp.2d 1168, 1174 (N.D. Cal. 2007).   The Asserted Trade Dress embodies both: the basic product configuration and over-generalization.

Mercado defined the Asserted Trade Dress to be nothing more than the basic configuration of a prayer candle with a colorful geometric border.  The standard features in Mercado's candles—a tall glass jar, wax, label, public domain saint image, religious embellishments—are arranged in their normal way by the many prayer candle manufacturers and thus the arrangement is incapable of acting as a source identifier. SOF ¶¶ 8, 20-21; *see Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.,* 65 F.3d 1063, 1070 (2d Cir. 1995) (finding makeup compacts generic because its "size and shape . . . are common characteristics of the entire genre of makeup compacts."); *Big Island Candies Inc. v. Cookie Corner*, 269 F.Supp.2d 1236, 1244 (D. Haw. 2003) (finding cookie generic since "very similar cookies are commonly made and sold."). The addition of a "long standing staple of devotional iconography" to the standard arrangement does not make the arrangement capable to "differentiate brands."

---

[2] It turns out that the "praying hands" claimed in the copyright is a copy of a public domain work "*Betende Hände*" created by Albrecht Dürer in about 1508.  SOF ¶33.

[3] "[G]eneric product designs are unprotectable even upon a showing of secondary meaning." *SCG Characters LLC v. Telebrands Corp.*, 2015 WL 4624020, at *7 (C.D. Cal. Aug. 3, 2015).

1   *Kendall–Jackson Winery, Ltd. v. E & J Gallo Winery*, 150 F.3d 1049 (9th Cir. 1998)

2   (holding that a grape leaf is generic for wine and incapable of differentiating brands).

3   The Asserted Trade Dress is generic not just as a whole but it is also generic as

4   to the individual elements. ████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████

6   █████████████████████████████████████████████   And, this Court

7   already found that "the use of a 'bullet,' arched, or conical shape in a depiction of a

8   religious icon [is not] in any way groundbreaking" and a "staple of religious

9   iconography."  DN 25 at 6.  It is generic to claim a church window that is a staple of

10   the religious purpose of the candle.  The idea of placing a religious figure in a stained-

11   glass window in the context of prayer is generic and not protectible.

12   Genericness results from trade dress that is too conceptual. *Walker & Zanger,*

13   *Inc.*, 549 F.Supp.2d at 1176 (trade dress overbroad when defined by "empty

14   generalities in the face of more precise alternatives" such as "colors reminiscent of

15   Provence" instead of the actual colors).  Here, Mercado deliberately defined the

16   Asserted Trade Dress to create an illusion of similarity – by using basic prayer candle

17   elements and the mere idea of stained glass, *i.e.* "segments of shapes in varying and

18   alternating sizes and colors." SOF ¶ 19. But, by doing so, Mercado's definition

19   concomitantly covers an infinite number of stained glass arrangements on a standard

20   prayer candle rendering the definition generic as too conceptual.  *A'lor Int'l, Ltd. v.*

21   *Tappers Fine Jewelry, Inc.*, 2013 WL 12174580, at *5 (C.D. Cal. Apr. 1, 2013), *aff'd*

22   *in relevant part*, 605 F.App'x 662 (9th Cir. 2015) (granting summary judgment because

23   "broad description" was "no more than a concept or idea."); *Shevy Custom Wigs, Inc.*

24   *v. Aggie Wigs*, 2006 WL 3335008, at *5 (E.D. N.Y. Nov. 17, 2006) (warning against

25   overbroad trade dress expressions that grant a monopoly to a concept; *Yurman Design,*

26   *Inc. v. PAJ, Inc*., 262 F.3d 101, 118 (2d Cir. 2001).  Mercado cannot meet its burden

27   of demonstrating that its trade dress is not generic when it claimed the concept of a

28   prayer candle with a cathedral window.

### 3. Mercado Failed to Prove Secondary Meaning: that the Primary Significance of the Asserted Trade Dress is Source Identification

"Secondary meaning is not easily established: proof of secondary meaning entails vigorous evidentiary requirements."[4] *Express, LLC v. Forever 21, Inc.*, 2010 WL 3489308, at *7–9 (C.D. Cal. Sept. 2, 2010).  Mercado cannot meet its strenuous burden to establish that a substantial segment of consumers associates the Asserted Trade Dress – a tall glass jar candle with a decorative label having a saint framed in any stained-glass window border – **with a single source**.  *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (en banc); *EZ Pedo, Inc. v. Mayclin Dental Studio, Inc.*, 284 F.Supp.3d 1065, 1071 (E.D. Cal. 2018).  Secondary meaning is established by evidence that "the **primary significance** of a product feature or term is to **identify the source of the product rather than the product itself**." *Two Pesos v. Taco Cabana*, 505 U.S. 763, 766 n.4 (1992) (emphasis added).

Direct evidence — like consumer surveys — provides the strongest evidence of secondary meaning. *Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 615 (9th Cir. 1989).  Indirect circumstantial evidence may include "exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; [and its] established place in the market." *Reserve Media, Inc.*, 2017 WL 123420, at *7; *Vision Sports, Inc.*, 888 F.2d at 615.  However, evidence of a manufacturer's sales, advertising and promotional activities is only material when accompanied by evidence relating to the effectiveness of efforts to create secondary meaning. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987); *Seed Lighting Design Co., Ltd. v. Home Depot*, 2005 WL 1868152, at *6 (N.D. Cal. Aug. 3, 2005).

---

[4] This Court has already found that "Plaintiff's trade dress is best characterized as product design rather than packaging, and therefore cannot be inherently distinctive." DN 95 at 8.  The Supreme Court held that product design is never inherently distinctive and thus cannot be protected "without a showing of secondary meaning." *Wal-Mart*, 529 U.S. at 214.

Mercado has not presented sufficient direct or circumstantial evidence of secondary meaning (*i.e.*, acquired distinctiveness) to create a genuine dispute of fact. Precisely like the summary judgment ruling of no secondary meaning in *Cont'l Lab. Prods.,* 114 F.Supp.2d at 1007-08, Mercado "offers little more than speculation and conjecture to support secondary meaning" and, after "ample opportunity," has offered "no direct evidence of secondary meaning, such as consumer surveys" and the circumstantial evidence "amounts to paltry and vaguely described promotional efforts" and "incomplete and ambiguous sales data."

### a.   Mercado Has No Direct Evidence of Secondary Meaning

The standard method of proof is a secondary meaning survey and yet Mercado did not conduct one.  SOF ¶ 62.  A consumer survey provides the most persuasive evidence of secondary meaning, because the "chief inquiry is directed towards the consumer's attitude about the mark in question." *Carter-Wallace, Inc. v. P&G Co*., 434 F.2d 794, 802 (9th Cir. 1970). It is "very difficult . . . to prove that consumers associate the mark . . . without the appropriate surveys and testimony." *LHO Chi. River, LLC v. Perillo*, 2016 U.S. Dist. LEXIS 183691 *14 (N.D. Ill. 2016); *Vision Ctr. v. Opticks, Inc*., 596 F.2d 111, 119 (5th Cir. 1979).

### b.   Mercado Has No Circumstantial Evidence that Consumers Associate the Asserted Trade Dress to a Single Source

Mercado relies solely on the indirect evidence listed in its response to interrogatories, which can be summarized as alleged exclusivity; sales and advertising; and the allegation of copying.  Mercado, however, missed the mark and failed to identify or produce any evidence connecting the smidgeon of circumstantial evidence that it produced to source-identification.

### i. Length of Use is Disconnected from Source Identification Evidence.

Exclusive use alone is insufficient evidence of secondary meaning and Mercado's use was not exclusive.  *See Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1327 (Fed. Cir. 1999) ("sole use of a design is a ***preliminary step***" to acquire secondary meaning).

1  "Whether secondary meaning attaches after a period of exclusive use depends on how,
2  rather than how long, the plaintiff used its mark or design." *Cont'l Lab.,* 114 F.Supp.2d
3  at 1004-05 (collecting cases finding use of ½ to 40 years insufficient alone for
4  secondary meaning).  The Asserted Trade Dress claims the product category of prayer
5  candles: a clear cylindrical container filled with a solid, single color wax with a
6  depiction of a saint with the name beneath the saint.  SOF ¶¶ 8, 21. ████

7  ████████████████████████████████████████████████████████

8  ████████████████████████████████████

9       Mercado chose its broad definition and thus cannot rely on its specific border
10  design as a cherry-picked basis of exclusivity.  Mercado did not claim its specific
11  stained glass but instead intentionally claimed prayer candle elements with a border
12  of "alternating sizes and colors" to cover the *idea* of stained glass.  Even if Mercado's
13  own definition is ignored, stained glass is not indicative of source as to religious
14  products because it is ubiquitous to religious places and products for prayer and
15  worship. SOF ¶¶ 22-24. The prayer candles, prayer card, and calendar shown below
16  are examples of a stained-glass border to imbue a religious theme (SOF ¶ 22):






Candles on Etsy          Prayer Card          Coloring Book

**ii.  Sales and Advertising was Largely Not Produced and Unconnected to Secondary Meaning.** ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

1 ██████████████████████████████████████ █████████

2 ████████████████████████████████████████████████

3 ██████████████████████████████ █ █████████████████

4 ████████████████████████████████████████████████

5 ███████████

6      Even if Mercado had a modicum of evidence, "evidence of advertising and

7 sales is entirely circumstantial and does not necessarily indicate that consumers

8 associate a mark with a particular source." *Icon Enter. Int'l, Inc. v. Am. Prod. Co.*,

9 2004 WL 5644805, at n. 9 (C.D. Cal. Oct. 7, 2004). "[S]ales figures alone are

10 inadequate to establish a connection between a product and its source." *Aromatique,*

11 *Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 873 (8th Cir. 1994); *Cicena Ltd. v. Columbia*

12 *Telcoms. Grp.,* 900 F.2d 1546, 1551 (Fed. Cir. 1990) (sales success "can be attributed

13 to many other factors"). Indeed, in product configuration cases, sales success will

14 typically not be probative of secondary meaning without evidence connecting sales

15 success to source-recognition. *Cont'l Lab. Prods.*, 114 F.Supp.2d at 1002; *Aurora*

16 *World, Inc*, 719 F.Supp.2d at 1154-55 (C.D. Cal. 2009). Here, Mercado has not

17 pointed to any evidence to connect its sales records to source-recognition.

18      Likewise, for advertising to evidence secondary meaning, the advertising "must

19 feature in some way the trade dress itself." *First Brands Corp.*, 809 F.2d at 1383.

20 First, Mercado provided ██████████████████████████████████████

21 ████████████████████████████████████████████████

22

23 ────────────────────

[5] The owner of the mark is "required to prove that [the mark] had acquired secondary

24 meaning" before the alleged infringer "began using [its own mark.]" *Levi Strauss &*

*Co.*, 778 F.2d at 1358; *Cicena Ltd. v. Columbia Telecomm. Group*, 900 F.2d 1546,

25 1552 (Fed. Cir. 1990).

26 [6] █████████████████████████████████████████████

27 ███████████████████████ *See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770,

780 (9th Cir. 2010) (holding the court properly disregarded a party's "unsupported

28 and unexplained assertion"); *Lear v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988)

("Sweeping conclusory allegations will not suffice to prevent summary judgment.").

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████  This is insufficient:

> To be probative of secondary meaning, . . . advertising must direct the
> consumer to those features claimed as trade dress. Merely 'featuring'
> the relevant aspect of the product in advertising is no more probative of
> secondary meaning than are strong sales; again, to provide protection
> based on extensive advertising would extend trade dress protection to
> the label (or to the combination claim) without any showing that the
> consumer associated the dress with the product's source.

*Yankee Candle Co. v. Bridgewater Candle Co*., 259 F.3d 25, 44 (1st Cir. 2001)

(*citing Int'l. Jensen, Inc. v. Metrosound U.S.A., Inc*., 4 F.3d 819, 824 (9th Cir. 1993)).

Mercado provided no evidence of any effort to highlight the features claimed as trade

dress toward source-identification.[7]   Mercado thus provided no evidence to support

the effectiveness of sales and advertising.

**iii.  Copying is Non-existent.**  Copying did not occur but is irrelevant to

secondary meaning unless the copying 1) was "precise" and 2) was conducted with a

bad faith intent to capitalize on another's goodwill or reputation.

Mercado's assertion that that the "blatant similarity of the products" supports

secondary meaning is irreconcilable with this Court's unappealed ruling that "Indio's

border artwork design is not . . . substantially similar to Mercado's design."[8] DN 25

at 6-7.  This Court already determined the issue of copying as to the stained-glass

border – and Mercado did not appeal – when it ruled that "Mercado cannot state a

viable copying claim" because "Mercado's expression are not similar to Indio's

---

[7] Nor has Mercado advanced any advertising evidence "that [the product] was part of
a campaign designed to promote consumer identification with this design." *Watson-
Marlow, Ltd v. Changzhou Prefluid Tech. Co.*, 2014 WL 12586432, at *4 (C.D. Cal.
Aug. 1, 2014); *Walker & Zanger, Inc.,* 549 F. Supp. 2d at 1180 ("advertising must
direct the consumer to those features claimed as trade dress; merely 'featuring' the
relevant aspect of the product does not suffice.").

[8] "Under [the law of the case] doctrine, a court should not reopen issues decided in
earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997).
This court has articulated twice already that "Indio's border artwork design is not,
however, substantially similar to Mercado's design." DN 26 at 6.

1   expression." DN 25 at 6-7.  Moreover, only "precise copying" may support secondary

2   meaning and the stained-glass designs are not remotely similar in design.[9] *Asics Corp.*

3   *v. Skechers U.S.A.*, 2007 WL 1424670, at \*5 (C.D. Cal. Apr. 26, 2007); *Ear Charms,*

4   *Inc. v. Bling Jewelry, Inc.*, 2017 WL 2957796, at \*3 (C.D. Cal. Apr. 11, 2017).

5       Nevertheless, copying is irrelevant without evidence that the "*reason* for

6   copying" was the intention to "pass off" the accused products as the plaintiffs.

7   *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 669 F.Supp.2d 1235 (D. Colo. 2009).

8   Indio's █████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  Mercado has no evidence that Indio attempted to confuse customers into purchasing

12  its candles instead of Sanctuary Series candles.  ████████████████████████████

13  ████████████████████████████████████████████████████████████████████

14  ██████████████████████████████████Indio also trademarked the Templar mark that was

15  prominently displayed in the customary spot below the prayer on every candle with

16  the Indio name and address.  SOF ¶¶ 54-55.  Courts have refused to infer secondary

17  meaning from copying where defendant displays its own trademarks. *Cont'l Lab.*

18  *Prods.*, 114 F.Supp.2d at 1008; *Spark Indus., LLC v. Kretek Int'l, Inc.,* 2014 U.S. Dist.

19  LEXIS 125538, at \*58 (C.D. Cal. Aug. 28, 2014).  Mercado's arguments about

20  secondary meaning are unsupported by sufficient direct or circumstantial evidence.

21      **4.    The Alleged Trade Dress is Functional**

22      "Under the Lanham Act, Congress imposes a presumption of functionality, and

23  plaintiff bears the burden of proving nonfunctionality." *Secalt S.A. v. Wuxi Shenxi*

24  *Constr. Co.*, 668 F.3d 677 (9th Cir. 2012) (citing 15 U.S.C. § 1125(a)(3)). One court –

25  in holding Apple's iPhone trade dress was functional – noted that the Ninth Circuit

26  strictly enforces non-functionality before affording protection to product

27  _____

28  [9] Notably, Mercado cannot rely on Indio's use of elements inherent to the product category of prayer candles – tall glass jar, saint, prayer – as evidence of copying.

1   configuration trade dress.  *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 991–92

2   (Fed. Cir. 2015), *rev'd on other grounds*, 137 S. Ct. 429 (2016).

3             **a.     The Trade Dress is the Functional Benefit the Consumer**

4                  **Purchases**

5        Functional features are features "which constitute the actual benefit that the

6   consumer wishes to purchase, as distinguished from an assurance that a particular

7   entity made, sponsored, or endorsed a product." *Secalt S.A.*, 668 F.3d at 683. The trade

8   dress of a product is functional **if the trade dress is "essential to the use or purpose**

9   **of the article or affects its cost or quality."** *Fleischer Studios, Inc. v. A.V.E.L.A.,*

10  *Inc*., 925 F.Supp.2d 1067, 1074 (C.D. Cal. 2012); *Millennium Labs. v. Ameritox, Ltd.,*

11  817 F.3d 1123, 1129 (9th Cir. 2016).

12       The fact that the trade dress is a combination of elements is insufficient to carry

13  the burden of providing sufficient admissible evidence of non-functionality.  *Red Star*

14  *Traders, LLC v. Abbyson Living Corp*., 2016 WL 9108405, at *4–5 (C.D. Cal. June

15  22, 2016) (noting that "the plaintiff's burden is made heavier in the context of product

16  design" to establish non-functionality and that "a design 'need only have some

17  utilitarian advantage to be considered functional.'").  To warrant protection, courts

18  "focus not on the individual elements, but rather on the overall visual impression that

19  the combination and arrangement of those elements create." *Clicks Billiards, Inc. v.*

20  *Sixshooters Inc*., 251 F.3d 1252, 1259 (9th Cir. 2001); accord *Alphaville Design, Inc.*

21  *v. Knoll, Inc*., 627 F.Supp.2d 1121, 1133 (N.D. Cal. 2009) (citing *Kendall–Jackson*,

22  150 F.3d at 1050).





If a seller advertises utilitarian advantages of a feature, this constitutes strong evidence of functionality." *Talking Rain Bev. Co. v. S. Beach Bev. Co.,* 349 F.3d 601, 604 (9th Cir. 2003). Simply put, a stained-glass cathedral window is standard religious imagery that is functional and unprotectable as a trademark.

### b.   The Asserted Trade Dress is Also Aesthetically Functional

An examination of the features making up the trade dress one by one further supports the functionality of the whole. *See Leatherman Tool Grp., Inc*, 199 F.3d at 1012–14. "[W]here the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance, it is **semantic trickery** to say that there is still some sort of separate 'overall appearance' which is non-functional." *Id.* at 1013 (emphasis added). A mere combination of functional components with nondescript or common colors, shapes, and configurations does not meet the requisite standards. *See Honeywell Int'l Inc. v. ICM Controls Corp*., 45 F.Supp.3d 969, 1000 (D. Minn. 2014).

The Asserted Trade Dress is thus functional for a second reason: aesthetic functionality. The Supreme Court has explicitly recognized that consumers often do not perceive a products design as identifying the source of the product, but rather "to

1  render the product itself more useful or more appealing." *Wal-Mart Stores,* 529 U.S.

2  at 213. ████████████████████████████████████████████████████████

3  ███████████████████████████████████████████████ *see Int'l Order of Job's*

4  *Daughters v. Lindeburg*, 633 F.2d 912, 918 (9th Cir. 1980) (finding functionality

5  where emblem on jewelry was "being merchandised on the basis of their intrinsic

6  value, not as a designation of origin or sponsorship" and thus was a "functional

7  aesthetic components of the jewelry"); *Aurora World, Inc.,* 719 F.Supp.2d at 1149

8  (toys resembling animals with "design features, such as the fanciful coloring of the

9  toys, are aesthetically functional" since the toys' aesthetics "drive the consumer to

10  purchase them; this functionality exists independent of its source-identifying

11  function"). A colorful stained-glass border provides an attractive appearance that is

12  particularly suitable to a prayer candle to frame the saint in the same way the saints

13  appear in cathedral windows. *See Pagliero v. Wallace China Co*., 198 F.2d 339, 343-

14  34 (9th Cir. 1952) (holding that china design was aesthetically functional because

15  essential selling feature is the aesthetics of the design); *Farmgirl Flowers, Inc. v.*

16  *Bloom That, Inc.,* 2015 WL 1939424, at *8 (N.D. Cal. Apr. 28, 2015) (holding that

17  primary selling feature of a bouquet is "its aesthetic appearance and that a burlap wrap

18  for floral arrangements is aesthetically pleasing.")

19      Prohibiting competitors from using the shape of church windows and stained

20  glass of any pattern is a feature that would place competitors at a significant non-

21  reputation-related disadvantage.  The Supreme Court in *Wal-Mart Stores*, 529 U.S. at

22  213-214, explained that it is "not worth the candle" that consumers "be deprived of

23  the benefits of competition with regard to the utilitarian and **esthetic purposes** that

24  product design ordinarily serves." noting that nonfunctionality can "involve

25  consideration of [a design feature's] esthetic appeal."  A product feature whose impact

26  is only "decorative and aesthetic, with no source-identifying role, cannot be given

27  exclusive rights under trade dress law." *Clicks Billiards, Inc. v. Sixshooters, Inc*., 251

28  F.3d 1252, 1258 (9th Cir. 2001).   Mercado over-generalized its purported trade dress

to monopolize the use of stained glass on a religious prayer candle, and now Mercado cannot establish that the Asserted Trade Dress is nonfunctional.

## B.    Mercado Failed to Establish a Likelihood of Confusion

The undisputed facts establish that Mercado cannot meet its burden of establishing a likelihood of confusion. "The determination of likelihood of confusion is a legal conclusion." *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc*., 616 F.2d 440, 443-44 (9th Cir. 1980).  Two particularly probative factors are the similarity of the marks and the proximity of the goods given the marketing channels used.  *Stone Creek, Inc. v. Omnia Italian Design, Inc*., 875 F.3d 426, 432 (9th Cir. 2017).  Not all factors are created equal, and their relative weight varies based on the context of a particular case. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc*., 638 F.3d 1137, 1145 (9th Cir. 2011); *Jada Toys Inc.* v. *Mattel, Inc.,* 496 F.3d 974, 979 (9th Cir. 2007).  Other potentially relevant factors include the strength of the trade dress, the degree of consumer care, actual confusion, defendant's intent in selecting the accused trade dress, and the likelihood of product expansion.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979).

### 1.    The Prayer Candles are not Similar

This Court has already found that the stained-glass designs of the Sanctuary and Templar candles are not substantially similar. DN 25 at 8-9. Similarity of the marks is "a critical question in the likelihood of confusion analysis." *GoTo.Com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1205 (9th Cir. 2000). When "two marks are entirely different . . . no reasonable jury could find a likelihood of confusion." *One Indus., LLC v. Jim O'Neal Distrib., Inc*., 578 F.3d 1154, 1165 (9th Cir. 2009).

### 2.    The Prayer Candles have Distinct Marketing Channels and are not Proximate in the Market

████████████████████████████████

████████████████████████████████

████████████████████    "Differences in price . . . should be considered in

measuring product proximity." *New Milani Grp., Inc. v. J.T. Bella, LLC*, 2013 WL 12116579, at *14 (C.D. Cal. July 22, 2013). ███████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ The lack of proximity based on divergent marketing channels weighs against a likelihood of confusion.

### 3.     The Other Factors Weigh Against a Likelihood of Confusion

**i.  The Asserted Trade Dress is Weak:**  The lack of inherent distinctiveness of the Asserted Trade Dress renders it weak.  *Kind LLC v. Clif Bar & Co.,* 2014 WL 2619817, at *6 (S.D.N.Y. June 12, 2014).  In addition, as set forth above, secondary meaning does not exist.  In fact, the choice of the *Squirt* survey format by Mercado's survey expert is an acknowledgement that the trade dress is weak. SOF ¶ 66; *Moroccanoil, Inc. v. Zotos Int'l, Inc*., 230 F.Supp.3d 1161, 1175 (C.D. Cal. 2017) ("The Squirt design is most appropriate where a product with a weak mark is sold in close proximity to the alleged infringer in the marketplace.").   Therefore, the weakness of the Asserted Trade Dress for both inherent and acquired distinctiveness weighs against finding a likelihood of confusion.

**ii.  Consumers Exercise a Degree of Care for Religious Products:**  ███████

██████████████████████████████ "price alone is not determinative of the care a consumer will take in making purchases" as a court "must look at the specific products in question rather than just the price." *See Herbalife Int'l, Inc. v. Lumene N. Am. LLC*, 2007 WL 4225776, at *10 (C.D. Cal. Oct. 15, 2007); *Toughlove America, LLC, v. MTV Networks Company, et al.*, 2009 WL 10669245, at *14 (C.D. Cal. Apr. 21, 2009) (finding consumers to be "extremely cautious" for low-cost self-help programs). Prayer candles are of great religious significance to the purchaser – and often displayed in a prominent place in the household and continuously burned in reverence to the saint. SOF ¶ 9.  Because prayer candles are a serious part of a religious tradition, the ordinary consumer exercises care despite the value price point.

1    **iii.    No Meaningful Evidence of Actual Confusion:**  A "lack of evidence

2    about actual confusion after an ample opportunity for confusion can be a powerful

3    indication that the junior trademark does not cause a meaningful likelihood of

4    confusion." *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F.Supp.2d

5    1083, 1093 (C.D. Cal. 2003) (citing *Cohn, v. Petsmart, Inc.,* 281 F.3d 837, 843 (9th

6    Cir. 2002)). ████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████

10   Summary judgment is proper where plaintiff had "no evidence" that consumers

11   confused the accused products with the trademarked products.[10] *Karoun Dairies, Inc.*

12   *v. Los Altos Food Prods.*, 107 Fed. Appx. 785, 786 (9th Cir. 2004).

13   **iv.  Mercado's Survey – at best – Indicates that Confusion is Unlikely:**

14   Mercado's survey should be afforded no weight.[11] *Sazerac Co., Inc. v. Fetzer*

15   *Vineyards, Inc.*, 265 F.Supp.3d 1013, 1037 (N.D. Cal. 2017) (finding "numerous

16   flaws" established that the Squirt-type survey "should be given no weight.")  The

---

[10] ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

*Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987) (affirming finding of negligible confusion where there were only 7 or 8 instances of confusion).

[11] Mercado conducted a Squirt survey that may be used <u>only in circumstances of proximate sale not present here</u>.  SOF ¶¶ 67-68; *see THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 238 (S.D.N.Y. 2010) (excluding survey for "fail[ing] to sufficiently replicate the manner in which consumers encountered the parties' products in the marketplace."). ████████████████████████████████████████████████

████████████████████████████████████████████*see Icon Enter.*, 2004 5644805, at *24. ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████

5 ████████████████████████████████ "[A] net level

6 above 10% should be required from a Squirt format." Likelihood of Confusion Studies

7 and the Straitened Scope of Squirt, 98 Trademark Rep. 739 (2008), FN 42; *Cairns v.*

8 *Franklin Mint Co.,* 24 F.Supp.2d 1013, 1040 (C.D. Cal. 1998). *Wuv's Int'l, Inc. v.*

9 *Love's Enters., Inc.*, 208 U.S.P.Q. 736, 756 (D. Colo. 1980) (finding 9% to be a

10 "questionable amount of confusion").

11       **v.  No Intention to Capitalize on Goodwill.**  As stated *supra*, "Mercado cannot

12 state a viable copying claim" as a result of a lack of similarity.  DN 25 at 7.  Therefore,

13 and as explained *supra*, copying cannot be shown.

14       **vi.  No Product Expansion into the Same Marketing Channels:**  This factor

15 supports a lack of confusion because ████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████

18     **4.**      **The Totality Supports a Finding of No Likelihood of Confusion**

19       A lack of similarity alone can warrant a court deciding on a lack of likelihood

20 of confusion as a matter of law, *e.g.*:

21     • *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987)
      (finding that the "labels of the two bottles were so dissimilar as to rule out any

22       possibility of confusion").

23     • *E. & J. Gallo Winery v. Proximo Spirits, Inc.*, 583 Fed. Appx. 632, 635–36 (9th
      Cir. 2014) (finding no "factual dispute worthy of a jury" where the "trade

24       dresses are so dissimilar that no reasonable juror could conclude otherwise).

25     • *Falcon Stainless, Inc. v. Rino Companies, Inc.*, 572 Fed. Appx. 483, 486 (9th

26       Cir. 2014) (finding no likelihood of confusion even though the parties sell

27       similar products, use the same marketing channels, and plaintiffs' mark is
      arbitrary as these factors are insufficient to support a jury's verdict when the

28       marks are dissimilar and no actual confusion was reported).

In addition, many courts have found that a determination of no substantial similarity in a copyright claim carries over to the likelihood of confusion analysis as a result of the crucial role of similarity.[12] *Litchfield v. Spielberg*, 736 F.3d 1352, 1358 (9th Cir. 1984) (holding that finding of no substantial similarity under copyright law precluded a finding of liability under Section 43(a) of the Lanham Act). "Where the evidence fails to support a finding of substantial similarity for copyright purposes, it also fails under section 43(a) of the Lanham Act." *Black's Guide, Inc. v. Mediamerica, Inc*., 1990 WL 169141, at *6 (N.D. Cal. Aug. 15, 1990).

In sum, the factors above demonstrate that Mercado has failed to show that confusion is possible, let alone probable. *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1085 (9th Cir. 2005) ("[Plaintiff] must show sufficient evidence to permit a rational trier of fact to find that confusion is probable, not merely possible."); *Chesebrough–Pond's, Inc. v. Faberge, Inc*., 666 F.2d 393 (9th Cir. 1982) (affirming summary judgment of no likelihood of confusion because of dissimilarity, lack of intent, and absence of evidence of actual confusion).  The facts here are not in dispute and summary judgment can be thus granted.

## C.      Mercado Cannot Prove any Exception to the First Sale Defense

Mercado cannot claim trademark infringement for goods that it sold: a trademark holder's right to control sale of a trademarked product is exhausted upon a first sale to another party. *Prestonettes, Inc., v. Coty*, 264 U.S. 359 (1924).  Mercado presented no evidence to meet its burden that an exception applies. ███████████ ████████████████████████████████████████████████████████████

---

[12] *Am. Greetings Corp. v. Easter Unlimited, Inc*., 579 F. Supp. 607, 616 (S.D. N.Y. 1983) (absence of substantial similarity required dismissal of trademark claim); *Alchemy II, Inc. v. Yes! Ent. Corp*., 844 F. Supp. 560, 570 (C.D. Cal. 1994) (finding trade dress claim was "in essence, a repeat of the copyright infringement claim," therefore, finding of no substantially similarity with respect to copyrights precluded a finding of likelihood of confusion.); *Warner Bros. Inc. v. Am. Broad. Companies, Inc*., 720 F.2d 231, 246 (2d Cir. 1983) ("the absence of substantial similarity leaves little basis for asserting a likelihood of confusion or palming off" for a Lanham Act claim.)

1 ███████████████ [13] ████████ To the extent that Mercado argues a re-

2 packaging exception based on its patent for pouring wax into candles into a shipping

3 box, it is undisputed that the Mercado candles had already been removed from the

4 shipping box and placed on the Vallarta store shelves. SOF ¶¶ 80-85.

## D. Mercado's Remaining Claims Fall with the Lanham Act Claims

6 Count III alleged federal unfair competition under the Lanham Act; Count IV

7 alleged "Intentional Interference with Prospective Economic Advantage." As

8 Mercado bases these claims on the trade dress factual averments, Counts III and IV

9 fail for the same reason as the Lanham Act claim. *See*, *e.g.*, *Glow Indus., Inc.*, 252

10 F.Supp.2d at 975 n. 90 ("standard for Lanham Act unfair competition is the same as

11 that for Lanham Act trademark infringement"); *Katzkin Leather, Inc. v. Nissan N.*

12 *Am., Inc.*, 2005 U.S. Dist. LEXIS 45540, at *23 (C.D. Cal. Dec. 22, 2005) (granting

13 summary judgement on intentional interference claim based on same conduct as

14 Lanham Act claim).

## E. Mercado is not Entitled to Damages or Willfulness

16 Mercado seeks lost profits and disgorgement of profits as damages, with a

17 cursory assertion of an entitlement to corrective advertising and punitive damages.

18 Mercado has no evidence of lost profits where it cannot show that but-for Indio's use

19 of the accused trade dress for sales to 99 Cents-Only that Mercado would have made

20 additional sales. Mercado's lost profits are for its Carisma candles that do not bear

21 the Asserted Trade Dress – which alone proves that the Asserted Trade Dress was not

22 a but-for cause of damages. Mercado also failed to prove its costs required to meet its

23 burden of proof on lost profits. Nor can Mercado make a disgorgement claim as it

---

[13] The repackaging exception itself is limited and only requires a notice of repackaging. *Brilliance Audio v. Haights Cross Communs. Inc*., 474 F.3d 365, 369 (6th Cir. 2007) (citing *Enesco Corp. v. Price/Costco Inc*., 146 F.3d 1083 (9th Cir. 1998)). Damages are unavailable and the only issue is a prospective notice that the product was repackaged, which Indio agreed to provide in 2013. SOF ¶ 87; *Farouk Sys. v. Target Corp.,* 2008 U.S. App. LEXIS 1225, at *9-10 (5th Cir. Jan. 22, 2008); *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924).

cannot establish the requisite willfulness or any profit to disgorge – with no expert

testimony (SOF ¶ 106)– to rebut Indio's documents and testimony that establishes that

███████████████████████████████████████████████████

### 1.   Mercado Cannot Prove Lost Profits for Carisma Candles

Mercado cannot prove the lost profit damages claimed for sales to 99 Cents

Only.  Fundamentally, Mercado cannot prove any direct causal link between Indio's

use of the accused design to any purportedly lost sales to establish "but-for" damages.

*See Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 620-621 (9th Cir. 1993). ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████The Ninth Circuit has held that damages cannot be claimed based

on products, *i.e.*, Carisma candles, for "which no likelihood of confusion existed."

*Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400, 1407 (9th Cir. 1993). ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

Even if Mercado had causal evidence, it failed to meet its burden to prove

profits – ██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

### 2.    Mercado Cannot Prove Willfulness or Disgorgement of Profits

Mercado cannot disgorge Indio's profits – it did not establish the prerequisite willfulness, nor did Mercado rebut Indio's evidence of lack of profit associated with the Templar candle sales.  "In the Ninth Circuit, willfulness is required to disgorge an infringer of its ill-gotten profits." *Spin Mater, Ltd. v. Zobmondo Entmt., LLC*., 944 F.Supp.2d 830, 846-48 (C.D. Cal. 2012). Willfulness requires a "deliberate intent to deceive about the source of the product." *Lindy Pen Co*., 982 F.2d 1400, 1406 (9th Cir. 1993). As stated above, Mercado not only has no viable evidence of copying but it is also law of the case that copying of the stained-glass window border did not occur. Indio's evidence of independent development is unrebutted; Indio applied its trademark to the candles; and sold the candles to 99 Cents Only and other value locations ████████████████████████████ This unregistered trade dress was in a state of dismissal following this Court's ruling in 2013 that the trade dress claim was unviable as a matter of law.  Mercado simply has no evidence of copying and illicit intent to infringe on valid trade dress rights to confuse customers. Mercado cannot remotely establish willfulness. *Razor USA LLC v. Vizio, Inc.*, 2015 WL 12656941, at *5 (C.D. Cal. Oct. 19, 2015) (granting summary judgment of no

willfulness). Even if it could, Indio's evidence of lack of any profits to disgorge is unrebutted. ██████████████████████████████████████

████████████████████████████████████████.

Importantly, Mercado's *unregistered* trade dress over product design is presumptively unprotectible – and that trade dress claim was in a state of dismissal for most of the period of sale following this Court's ruling that the trade dress claim was unviable as a matter of law.  Mercado has no evidence of illicit intent to confuse customers by infringing on knowingly valid trade dress rights.

### 3.  Mercado Did Not Provide Evidence or Even a Viable Theory of Corrective Advertising or Other Damages

Mercado failed to disclose any corrective advertising theory in its Interrogatory responses – only that it "seeks" "payment for corrective advertising" and "punitive" damages. SOF ¶ 88. Mercado has the burden of presenting evidence as to the foundational fact that its mark lost value by presenting non-speculative evidence that its good will has actually been diminished.  *See Int'l Oddities v. Record*, 2013 WL 3864050, at *14 (C.D. Cal. July 22, 2013); *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576, at *6 (N.D. Cal. July 14, 2011). ████████████████████████

████████████████████████████████████████████

████ *see Adray*, 76 F.3d at 988.  Mercado has not disclosed any theory or evidence to support any corrective advertising or other damages claim.

## V.    CONCLUSION

For the foregoing reasons, Mercado's entire case is defective factually and legally.  Indio's Templar prayer candles do not infringe any protectable trade dress in Mercado's Sanctuary Series candles. Indio respectfully requests that this Court grant its motion for summary judgment and dismiss with prejudice Count I - IV.  Indio also respectfully requests that this Court hold that Mercado failed to advance sufficient evidence to meet its burden to prove damages or willfulness.

Date: April 26, 2018

Respectfully submitted,

By: /s/ Linda D. Mettes
Linda D.  Mettes (*Pro Hac Vice*)
Rebecca J.  Cantor (*Pro Hac Vice*)
Kristin L. Murphy (*Pro Hac Vice*)
Anita C. Marinelli (*Pro Hac Vice*)
**BROOKS KUSHMAN P.C.**
1000 Town Center, 22nd Floor
Southfield, MI   48075
Tel:  248-358-4400 / Fax:  248-358-3351
lmettes@brookskushman.com

Edward W. Lukas
**HARRINGTON, FOXX, DUBROW & CANTER, LLP**
333 South Hope Street, Suite 1000
Los Angeles, California 90071
Telephone: (213) 489-3222
elukas@kfdclaw.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I certify that I served:

**REDACTED DEFENDANT INDIO PRODUCTS, INC.'S NOTICE OF MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS AND BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

<u>   X   </u>   delivering via e-mail:

Luan Phan <lphan@pblawgroup.net>
Jody Borrelli' <jborrelli@pblawgroup.net>

___   mailing (via First-Class mail)

a copy to:

Luan Phan
Jody Borrelli
1901 Avenue of the Stars,
Suite 277
Los Angeles, California 90067

*Attorneys for Plaintiff*

Dated: April 26, 2018                    /s/ Anita C. Marinelli