Edward W. Lukas (SBN 155214)
HARRINGTON, FOXX, DUBROW
& CANTER, LLP
333 South Hope Street, Suite 1000
Los Angeles, California 90071
Telephone: (213) 489-3222
elukas@kfdclaw.com

Linda D. Mettes (*Pro Hac Vice*)
Rebecca J. Cantor (*Pro Hac Vice*)
Kristin L. Murphy (*Pro Hac Vice*)
Anita C. Marinelli (*Pro Hac Vice*)
BROOKS KUSHMAN P.C.
1000 Town Center
Twenty-Second Floor
Southfield, Michigan 48075
Telephone: 248-358-4400
lmettes@brookskushman.com
rcantor@brookskushman.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCADO LATINO, INC. dba CONTINENTAL CANDLE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>INDIO PRODUCTS, INC., a California Corporation, and DOES 1 through 10, Inclusive,<br><br>*Defendant.* | Case No. 2:13-cv-01027-DDP-JEM<br><br>**DECLARATION OF LINDA D. METTES REGARDING DEFENDANT'S MOTION FOR ATTORNEY FEES RELATED TO THE TRADE DRESS AND TRADEMARK CLAIMS**<br><br>Judge: Hon. Dean D. Pregerson<br>Courtroom: 9C<br>Date: Monday, September 17, 2018<br>Time: 10:00 AM |

I, Linda D. Mettes, hereby declare:

1. I am lead counsel of record for the Defendant, Indio Products, Inc. ("Indio") in the above-entitled action. I am an attorney at law duly licensed in the states of Michigan and New York, as well as before the United States District Court, Central District of California *pro hac vice*. I am an attorney in the law firm of Brooks Kushman P.C. which specializes in patent, trademark and copyright litigation. If called to testify, I could and would competently testify to the following facts of which I have personal knowledge.

2. I submit this declaration in support of Indio's motion for attorneys' fees with respect to those fees incurred for the trade dress and trademark infringement claims in this matter after this case was remanded by the Court of Appeals for the 9th Circuit. I have also previously provided a provided a declaration in support for Indio's motion for attorney fees with respect to the dismissed copyright claims.

3. Attached hereto as **Exhibit 1** is a true and correct copy of pertinent portions of the 2015 Report of the Economic Survey prepared by the American Intellectual Property Law Association.

4. Attached hereto as **Exhibit 2** are true and correct copies of invoices issued to Indio by Brooks Kushman in connection with legal services provided to Indio since the remand in the instant litigation action. The invoices have been redacted to account for attorney-client and work product privilege or other confidential material that is not material to the requested fees. Further, to avoid unnecessary opposition, all attorney fees incurred for the withdrawn motions in limine and Defendant's Motion to Compel (where attorney fees were denied) are not requested and have also been redacted from the invoices. In addition, the invoices also reflect adjustments to be conservative and to reflect non-requested attorney fees.

5. Attached hereto as **Exhibit 3** are true and correct copies of invoices issued by local counsel, Harrington, Foxx, Dubrow & Canter, LLP ("Harrington"), in connection with legal services provided to Indio regarding the instant litigation

since remand. The Harrington firm invoiced $10,145.25 for local counsel services since remand and these invoices are reasonable.

6. Attached hereto as **Exhibit 4** is a true and correct copy of an invoice issued to Indio by a survey expert witness, Kenneth Hollander, retained by Indio to rebut the likelihood of confusion survey proffered by Mercado Latino, Inc. ("Mercado") in this action.

7. Attached hereto as **Exhibit 5** are true and correct copies of invoices issued to Indio by Christensen Associates, for services render with respect to the expert damages report of Indio's damages expert, Jon W. Tepp, to rebut Mercado's $9.8 million damages claim in this action that Mercado alleged should be trebled to nearly $30 million.

8. The expert witness fees incurred by Indio to rebut Mercado's survey and damages claim totaled $34,114.00 collectively.[1] Based on my experience, these costs were reasonable.

9. I have reviewed all of the bills submitted to Indio in this matter from BK. The invoices specify the date, services rendered and total cost associated with the legal services provided to Indio for this case. These billing records are kept in the ordinary course of my firm's business, which is a regularly conducted business activity, and it is the regular practice of our firm to make these billing records to reflect litigation expenses billable to the client.

10. I have conducted the bulk of this litigation with the assistance of a first-year associate Anita Marinelli. Two other attorneys assisted with specific tasks at isolated times. With the exception of Ms. Marinelli,[2] the bills are based on the

---

[1] The total charges incurred by the damages expert was $18,614.00 and the total charges incurred for this matter by the rebuttal survey expert was $15,500.00, respectively.

[2] Ms. Anita Marinelli is a first year associate whose rate was maintained at her law clerk hourly rate of $130 for this matter alone as an accommodation to the client and to permit substantive litigation training. Her hourly rate for all other matters for Indio and other clients is at about $190.

normal hourly billing rates and the total amount of time that legal professionals spent working on this case. For the convenience of the Court, I have summarized the invoices into categories and by attorney/paralegal, specifically in connection with 1) the Answer to the Second Amended Complaint, initial case factual and legal assessment after remand, initial disclosures, scheduling order, protective order and the Judgment on the Pleadings; 2) fact discovery; 3) expert discovery; 4) two separate mediations and the related briefing and preparation; and 5) Indio's Motion for Summary Judgment, including opening brief, statement of undisputed facts, reply brief and oral argument, and Indio's responses to Mercado's numerous objection papers submitted by Mercado to virtually all of Indio's summary judgment filing and Indio's Objections to declarations (including a *Daubert* challenge).[3]

11. The professional fees Indio is seeking is **$394,553**. Notably, this amount *excludes* any billing directed to 1) Indio's Motion to Compel; 2) Indio's preparation of its withdrawn and unfiled Motions-in-Limine on Made-For-Litigation Documents and Daubert Challenge and 3) any ongoing work toward the present attorney fee motion. Nor do the professional charges include any non-working travel time from Michigan to California, New York (deposition to Hal Poret) or Texas (deposition of Kurt Zehnder). From the outset, as often noted in the original invoices, I reduced my hours charged as an accommodation to the client.

12. The charges were calculated by multiplying the number of hours each attorney or paralegal spent working on the matter with the respective hourly rate, said rate depending on the experience and ability of the individual attorney or paralegal. The hourly rates are provided in the table below for each individual attorney from July 2016 until June 2018.

---

[3] As will be explained below, Indio has taken a conservative approach with respect to its request for fees incurred as part of the Summary Judgment motion – capping the number of hours for the motion and addressing Mercado's objections.

| Timekeeper | Position | Experience | Hourly Rate |
|---|---|---|---|
| Linda D. Mettes | Shareholder | 23 Years | $420-$445 |
| Anita Marinelli | Junior Associate | 1 Year | $130 |
| Rebecca Cantor | Senior Attorney | 10 Years | $320 |
| Kristin L. Murphy | Shareholder | 21 Years | $395 |
| Stephen Johnson | Paralegal | n/a | $130-$140 |

Based on my experience, I believe that the rates charged by BK are fair and reasonable and consistent with accepted and prevailing rates for the type of work performed. In fact, it is my experience that the rates are considerably below those commonly charged by attorneys at law firms which possess the requisite competence to handle intellectual property cases. My rate of $420-445 is still less than my rate of $450 from over a decade ago when I practiced with a New York City firm. I have been an attorney for 23 years. For example, according to the 2015 AIPLA Survey, the average hourly billing rate for a partner with 15-24 years of experience averaged $468 nationally; the average hourly billing rate for a partner in the Los Angeles area averaged $561. *See* Ex 1 at I-25. The rates of myself and Ms. Murphy, who has 20 years of experience, are lower than either measure (and substantially less than higher rates found reasonable in cases in the Central District of California set forth in the brief). In the AIPLA survey, hourly rates for an associate with less than five years of experience averaged $279 nationally, with rates in the Los Angeles area recognized as $79 higher than the overall average. *See* Ex 1 at I-36. The rate of $130 of Ms. Marinelli is not only substantially lower than these measures, but is also lower than the rate of $190 paid by Indio for other matters and other firm clients.

13. The below tables show the reasonableness of the fee request of **$394,553** as the fees charged to the client, which were already discounted, were higher than this fee request, as shown in the below summaries prepared from invoices regularly prepared by BK and submitted to Indio for payment.

| ATTORNEY | ANSWER, INITIAL FACT AND LEGAL RESEARCH, INITIAL DISCLOSURES, SCHEDULING ORDER, PROTECTIVE ORDER AND MOTION FOR JUDGMENT ON THE PLEADINGS | | FACT DISCOVERY | | EXPERT DISCOVERY | |
|---|---|---|---|---|---|---|
| | HOURS | TOTAL | HOURS | TOTAL | HOURS | TOTAL |
| Linda Mettes | 161.9 | $ 69,256.50 | 176.8 | $ 95,189.00 | 79.25 | $ 35,309.75 |
| Anita Marinelli | | | 126 | $ 16,399.50 | 67.19 | $ 8,734.70 |
| Rebecca Cantor | 55 | $ 18,000.00 | 7.4 | $ 2,516.00 | | |
| Kristin Murphy | | | | | 23.5 | $ 8,587.50 |
| Stephen Johnson | | | 6.2 | $ 873.00 | | |
| TOTALS | | $ 87,256.50 | | $ 114,977.50 | | $ 52,632.20 |

| ATTORNEY | TWO MEDIATIONS (Briefing, Oral Argument Preparation, and Participation) | | SUMMARY JUDGMENT (Opening, Statement of Incontrovertible Facts, Reply and Oral Argument), RESPONSE TO MULTIPLE OBJECTION PAPERS AND MOTION TO STRIKE INDIO EVIDENCE; AND INDIO OBJECTIONS (INCLUDING DAUBERT CHALLENGE TO SURVEY EXPERT) | |
|---|---|---|---|---|
| | HOURS | TOTAL | HOURS | TOTAL |
| Linda Mettes | 54.7 | $ 24,414.00 | 212.81 | $ 95,144.00 |
| Anita Marinelli | 23.9 | $ 2,107.00 | 306.28 | $ 39,815.90 |
| Rebecca Cantor | 1.1 | $ 374.00 | | |
| Kristin Murphy | 5.95 | $ 2,350.25 | 87.03 | $ 34,376.75 |
| TOTALS | | $ 29,245.25 | | $ 169,336.65 |

14. The above invoice records reflect reasonable time expended that was necessary to address the issues encountered in the litigation and well within similar cases involving trade dress and trademarks. The request for fees for the summary judgment and related briefing, in particular, is capped at the amount of hours held to be reasonable in 2017 in the Central District of California.

15. Of the total fees incurred, about **$87,256** relate to Indio's Answer to the Second Amended Complaint, working with opposing counsel on the scheduling order, preparing the initial disclosures and preparing and arguing Indio's Motion for Judgment on the Pleadings. Indio's work on its Motion for Judgment on the Pleadings was primarily performed by me, as I had prior history with respect to this case, with assistance for Ms. Cantor. While Indio's Motion for Judgment on the Pleadings was not granted, this motion was important for this matter, in that it resolved an important aspect of the case, namely the determination that Mercado's claimed trade dress was for a product design rather than for product packaging. This ruling further crystalized Mercado's burden of proofs with respect to its Asserted Trade Dress claim and was important to the ultimate summary judgment ruling.

16. Of the total fees incurred, about **$114,977** of the requested fees relate to fact discovery in this matter. The work performed was necessary for this matter, and particularly reasonable whether considering the $9.8 million lost profit claim or the $30 million total damages claim being made by Mercado. Such discovery included written discovery, such as document requests, interrogatories and requests for admission, as well as depositions for Mercado's and Indio's fact witnesses. This work also entailed chasing Mercado about its lack of participation in discovery and evasion of providing dates for deposition. Mercado's uncooperativeness resulted in the fact depositions being taken after the close of fact discovery. In addition, the Court ordered Mercado to make multiple witnesses available for deposition in response to Indio's Motion to Compel when Mercado belatedly disclosed new witnesses in its supplemental initial disclosures four days before the close of fact discovery. To save costs, Indio only chose to take Mr. Zehnder's deposition. Notably, as a conservative measure, Mercado's requested fees for fact discovery do not include any attorney charges for Indio's Motion to Compel, even though such motion directly resulted in Mr. Zehnder's production.

17. Of the total fees incurred, approximately **$52,632** relate to expert discovery. Mercado sought and procured a survey, from its expert Hal Poret. Mr. Poret's survey results were used in response to Indio's Motion for Judgment on the Pleadings, and later also relied upon in opposition to Indio's Summary Judgment motion. However, Mercado withheld the underlying data for the survey for months, in the face of multiple discovery requests and follow-up emails that were largely ignored. When the data was finally produced, it was produced in an unusable format. It was not until after Indio filed its Motion to Compel that Mercado finally produced the data files for the survey, well after the close of fact discovery, that permitted Indio to utilize the information with a rebuttal survey expert. Due to the timing of the production and so that Indio's survey expert could analyze the data, Indio was forced to undertake a manual entry of the data (performed by Ms. Marinelli), at substantial cost to Indio. Ms. Marinelli and myself were primarily responsible for working with the survey expert and supplying the information requested by the expert. The time in working with the survey expert in obtaining the information needed by the survey expert on the background of the prayer candle market, as well as the specific relevant facts of the case were reasonable and necessary to address the flaws in the Poret survey.

18. In addition to a rebuttal survey expert, Indio also utilized a damages expert to rebut Mercado's $9.8 million lost profit damage claim and other unarticulated claims. Ms. Murphy and I were primarily responsible for working with the damages expert and supplying factual information to the expert as requested. The attorney time in working the damages expert in obtaining information needed by the damages expert on the background of the prayer candle market, as well as specific cost and sales information related to the accused products and other specific facts of the case were reasonable and necessary to rebut Mercado's unsupported damages claim.

19. Of the requested attorney fees, approximately **$29,245** were fees incurred in connection with two separate mediations, the first in the summer of 2017. To make mediation fruitful, Indio requested that the parties agree to a mutual exchange of relevant financial information, under a protective order, in advance of the mediation. Indio collected relevant information related to the accused products, including financial information. The first mediation was unsuccessful due the excessive damage claim made by Mercado.

20. A second mediation occurred in February 2018 at Mercado's request. This mediation was also unsuccessful. The fees incurred for the mediations were reasonable, necessary and incurred largely in connection with collection of relevant information, as well as preparation of a mediation statement and participation at the mediation.

21. Indio's summary judgment motion was comprehensive and encompassed all aspects of this case – both the trade dress and the trademark claim along with damages. Specifically, Indio sought summary judgment of 1) no trade dress infringement, based on lack of a protectible common law trade dress and a lack of a likelihood of confusion; 2) no trademark infringement in connection with Indio's resale of Mercado candles purchased from customer Vallarta; 3) lack of damages; and 4) the failure of proof with respect to Mercado's state law claims. With respect to the attorney fees requested for Indio's work on summary judgment, Indio proposes a conservative approach in setting a fee award for the work undertaken in connection with summary judgment that is in accord with the hours found reasonable in the Central District of California in 2017 in connection with a trade dress summary judgment. *See Amusement Art, LLC v. Life is Beautiful, LLC*, 2017 U.S. Dist. LEXIS 79135 (C.D. Cal. May 23, 2017). This approach is conservative because the present case involves both trade dress and trademark

claims. Further, Mercado's Opposition was unwieldy, overlong and lacked citations.[4]

22. In accord with *Amusement Art*, Indio requests an award of fees for a total of eighty (80) hours for the work performed to be allocated as follows: 70 hours for work I performed as lead counsel and lead drafter of the motion papers, and 10 hours for the work performed by Ms. Marinelli. The total fees requested for work in connection with the opening brief using this conservative approach is **$32,450.**

23. I believe the work undertaken with respect to the opening summary judgment brief, declarations, and statement of incontrovertible facts was both reasonable and necessary. As I am the most experienced litigator and most familiar with the factual issues in the case, I primarily drafted the motion, declarations, and statement of uncontroverted facts and reviewed and conducted legal research, with the assistance of first year attorney Ms. Marinelli on legal and factual research and citation work, along with the under-seal filing prerequisites. Ms. Murphy assisted with the damages related aspect of the motion as she worked with the damages expert during expert discovery.

24. With respect to oral argument, Indio proposes an award of fees for a total of ten (10) hours for preparation for and participation at oral argument. As I attended and argued the motion on behalf of Indio, I propose that all ten hours are allocated to me such that the requested attorney fee award for oral argument is approximately **$4,450**.

25. Indio proposes an award of fees for thirty (30) hours allocated to my work for work performed in connection with the reply for a total fee award of at least **$13,350** for the reply.

26. An additional amount is requested for the work necessitated by Mercado's excessive opposition filing: 1) responding to Mercado's "Statement of

---

[4] Mercado exceeded the page limit by failing to comply with the local rules on format of the brief using small fonts and other violations.

Declaration of Linda D. Mettes
Case No. 2:13-cv-01027-DDP-JEM      9

Disputed Facts," which lacked proper evidentiary support, instead citing generally to unsupported declarations proffered by Mercado's principals, 2) responding to Mercado's multiple evidentiary objections to virtually every one of Indio's numbered facts listed it its Statement of Incontrovertible Facts, 3) responding to Mercado's multiple and unsupported objections to all of Indio's declarations in support of its Motion for Summary Judgment, 4) addressing Mercado's Motion to Strike and Daubert challenges to Indio's survey and damages experts, and 5) preparing its own Objections to the declarations submitted by Mercado witnesses in violation of Rule 26, 37 and including a declaration by its survey expert that was essentially a legal brief.

27. Mercado's papering-up-the-record strategy resulted in substantial work by Indio that equated to the filing of five additional briefs – for an additional **$60,191** based on an approximation from my personal knowledge, the actual filings, and the invoices. I took the lead on most of the briefing with important assistance from Ms. Marinelli for legal research and drafting initial responses on Mercado's multiple objections and its Statement of Disputed Facts. Of the 200 separate objections raised by Mercado, at most, only 11 of objections were legitimate objections. Ms. Murphy was tasked primarily with addressing Mercado's Objections to Indio's Statement of Incontrovertible Facts and general assistance. Notably, to accomplish all of the filings, Ms. Marinelli, Ms. Murphy and I worked round the clock for over thirty-six hours continuous beginning the Sunday before the filing, but we substantially reduced the billings to 11, 8 and 12 hours per day, respectively. Mercado's imposition of objections that had to be responded to and made the work performed by the Indio team necessary and reasonable.

28. Based on an approximation from my personal knowledge, the actual filings, and my review of the invoices, I approximate that no more than **$5,000** of professional fees were incurred in connection with Indio's successful defense with respect to Mercado's trademark claim.

29. In the course of defending this lawsuit, Indio also incurred additional expenses in the amount of approximately $**31,651**, such as disbursements for non-metered phone, fax, postage and copying charges (collected on the BK invoices under "administrative charges"), travel costs for my attendance at hearings and depositions, courier services and pacer charges incurred, deposition costs incurred and online research charged to Indio. All of these expenses are itemized on each of the invoices attached as Ex. 2.

| EXPENSE | AMOUNT SOUGHT |
|---|---|
| Non-metered phone, fax, postage and copying charges | $10,414.95 |
| Travel – (hearings, depositions – one attorney) | $14,562.71 |
| Courier Services/Pacer Documents | $649.07 |
| Deposition costs (court reporter/transcripts) | $3,287.95 |
| Online Research | $2,737.00 |
| **TOTAL** | **$31,651.68** |

30. Thus, the total fees of **$394,553 ($389,553** of which is directed to Indio's defense fees incurred that relate to Mercado's trade dress claim, and **$5000** of which is directed to Indio's defense fees incurred that relate to Mercado's trademark claim) and costs of **$31,651** is reasonable for all of the work performed in connection Indio's defense of this action with respect to the trade dress and trademark causes of action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: <u>July 31, 2018</u>

/s/ Linda D. Mettes__<br>Linda D. Mettes